Shingleur–Johnson & Co. *v.* Canton Cotton Warehouse
Company.

1. Bailment. *Warehouse. Lien.*

   The specific lien of a warehouseman which attaches to the subject of
   each separate bailment, does not extend to a balance due him on
   account of previous dealings of the same nature.

2. Same. *Preparation for sale or market. Code 1892, § 2682.*

   A warehouseman has no lien upon baled cotton in his care, under
   code 1892, § 2682, giving a lien upon crops to all who aid in their
   preparation for sale or market.

3. Same. *Warehouse receipt. Indorsement.*

   The purchaser of goods who receives from his vendor the warehouse
   receipt issued to him therefor, can maintain replevin against the
   warehouseman for the same, although the receipt is not indorsed
   by the bailor, and provides that the goods are to be delivered only
   on the receipt " properly indorsed."

From the circuit court of Madison county.

Hon. Robert Powell, Judge.

Shingleur, etc., Co., appellant, was the plaintiff, and the
Canton, etc., Co., appellee, defendant in the court below.    The
opinion states the case.

*H. B. Greaves*, for appellant.

The appellee had no statutory lien under § 2862, code 1892.
It is true this court has held in the case of *Irvin* v. *Miller*, 72
Miss., 174, that the ginner had a statutory lien under said sec-
tion to secure him for " preparing the crop for market," be-
cause it was perfectly clear he helped to prepare the crop fo-
market, cotton not ginned and properly baled not being pre
pared for market.    But to hold that a warehouse company re-
ceiving cotton, raised by probably one hundred different people,

suitably prepared for market when delivered to them, and comprising probably portions of as many different crops, and actually on the market when delivered, has a lien under § 2682, strikes me as stretching the doctrine too far. The common law lien of a warehouseman is a specific lien upon the goods stored for the particular charges for such storage. See *Steinman* v. *Wilkins*, 7 W. & S. (Pa.) 466, s.c. 42 Am. Dec., 254.

That the lien can only extend to goods deposited at one time, one bailment, one transaction, not a dozen, see *Schmidt* v. *Bloom*, 9 Wend. (N. Y.), 268, s.c. 24 Am. Dec., 143; *Scott* v. *Jester*, 13 Ark., 437.

There was no privity of contract in the beginning between appellants and appellees. The cotton was not stored in appellee's warehouse by appellants, or any one for them. The cotton was stored in the names of the various parties who raised the cotton, the warehouse treating each separate bale as a separate bailment, giving for each bale deposited a separate receipt or ticket, which ticket or receipt was by the original bailor delivered to whoever bought that particular bale, and the cotton remained in the warehouse in the original party's name till the receipt was produced by the purchaser, when he was entitled to the cotton, less the charges on each separate bale. Appellees urge here, for the first time, objections to the introduction of the warehouse receipts, because not indorsed by the original holders. If there were any merit in this objection, it would be too late here. If it had been urged below, we could have shown by undisputed evidence that such indorsements had never been required. No receipts were ever indorsed. But there is no merit in this objection, because the delivery of the receipt was a symbolical delivery of the cotton, and would enable the holder to bring replevin, regardless of indorsements. *Bank* v. *Dearborn*, 115 Mass., 219; 9 Mo.App., 399; 13 Bush (Ky.), 495.

*W. H. Powell*, for appellee.

By the terms of the warehouse receipt no one was entitled to the cotton until the receipts were properly indorsed. 64 Miss.,

610; 70 Miss., 332, *Railroad Co.* v. *Cantrell*, and 72 Miss., 1023.   It is unnecessary to cite further authority on this point.

But, conceding, for the sake of the argument, that appellant was entitled to the writ, they cannot recover until the charges of $291.74 have been paid to appellees.   The appellees had a double lien upon the fifty-nine bales to secure said sum: (1) A common law and commercial lien, as warehousemen and bailees; (2) a statutory lien or laborer's lien under § 2682 of the code of 1892, which reads: "And every employe, laborer or other person who may aid by his labor to make, gather or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his share, wages or interest in such crop, whatever may be the kind of wages or the nature of the interest in such crop," etc.

Now, as to the common law lien and commercial lien:   The proof shows that the seventy-nine and fifty-nine bales were in the warehouse at one and the same time; that it had all been weighed, stored and compressed by the appellee, and that the appellant bought the cotton subject to the weighing and storage charges and that it was compressed by their direction; that, while the appellee had parted with the possession of seventy-nine bales, yet it retained the fifty-nine bales sued for, to secure it for its whole charges on all.   28 Am. & Eng. Enc. L., 663–665, and notes 2 and 3 on page 664.   Replevin will not lie until all charges are paid.   *Ib.*, 667, 668.   The charges on the seventy-nine bales were never paid or tendered.

Now, as to the statutory lien under § 2862, of code 1892. The proof shows that it was necessary to weigh the cotton, to store it and compress it; that compressing it rendered it more valuable to the producer, and created a wider market; that the appellee handled this cotton and aided by its labor to prepare it for market and sale.   We are purely an agricultural state, and the policy of our law is to protect the landlord, laborer and other persons who handle the agricultural products at all hazards.   65 Miss., 97; 74 Miss., 142; 75 Miss., 181;

76 Miss., 133. Demand must have been made by the one entitled to the possession before replevin will lie.   70 Miss., 1.

TERRAL, J., delivered the opinion of the court.

The appellant sued the appellee in replevin for fifty-nine bales of cotton, and before suit brought demanded the delivery of the same, and offered to the warehouse company all storage and other charges thereon, amounting to $124.55, upon said cotton. The warehouse company refused the delivery of the cotton unless appellant would pay it the storage and other charges on seventy-nine bales of cotton previously delivered by appellee to appellant, amounting to $162.89. For some reason appellant declined to pay the charges on the previous bailments. It appeared from the evidence that a separate receipt was given for each bale of cotton, and there was no connection between the bailment of the fifty-nine bales of cotton sued for and the prior bailment of the seventy-nine bales of cotton, upon which $162.89 was claimed as charges. A judgment was rendered against appellant for the expenses on the seventy-nine bales of cotton, as well as that on the fifty-nine bales sued for. In that respect, it is claimed that the court erred.

1. The contention of the appellee that a warehouse lien is a general lien and gives a right to retain for a balance of accounts relating to similar dealings is not to be maintained. It is a common law lien, which is the creature of policy, and is a specific or particular lien, which attaches only upon each separate bailment, and is lost when all the articles of each several bailment are delivered to the bailor or his assignee. Angell on Carriers, sec. 66, and notes; *Scott* v. *Jester*, 13 Ark. Rep., 446, s.c. 42 Am. Dec., 257; 27 Ill. App. Ct., 529.

2. The contention that a warehouseman, under § 2682, code 1892, has a lien on cotton raised in this state for storage and other charges connected therewith is not supported by any reasonable construction of that section.

The cotton here was not in the warehouse to prepare it for market, but was at the market, and was there for sale or shipment, and the charges claimed were incident to the handling of the cotton then in the market. It is not covered, we think, by § 2682.

3. On the delivery of each bale of cotton at the warehouse by the farmer bringing it in for sale, a receipt was given, of the following tenor:

"No. ——. Received of —————— one bale of cotton, in apparent good order. Mark, ——. No., ——. Weight, ——. Remarks, ————.    ——————, *Manager.*

"Responsible for loss or damage by fire or water. This bale of cotton to be delivered only on this receipt properly indorsed."

It is not denied but that appellant had bought the fifty-nine bales of cotton from the owners and had received these unindorsed receipts as a symbolical delivery of the bales of cotton; that, as between the bailor and the assignee, the property was intended to be passed to the assignee by the delivery of the unindorsed receipts. The intention of the parties gives effect to their acts as a valid transfer of the property. *Allen* v. *Williams*, 12 Pick., 297; *Bank* v. *Dearborn*, 115 Mass., 219; *Bank* v. *Ross*, 9 Mo. App., 399; *Lickbarrow* v. *Mason*, Smith's Ldg. Cases (8th ed.), 1209.

However, no objection was made in the court below to the receipts because not indorsed, and the objection comes too late when made here for the first time.

The appellant, upon the case as made by the record, was entitled to recover the fifty-nine bales of cotton the charges on which had been tendered, with all costs.

*Reversed and remanded.*